UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PASTOR PAUL DOYLE, CLAY CLARK,<br><br>                     Plaintiffs,<br><br>    vs.<br><br>ATTORNEY GENERAL LETITIA JAMES, in her individual and official capacity,<br><br>                     Defendant. | Case No. 23-cv-00071-JLS-HKS |

**DEFENDANT'S OBJECTIONS TO THE REPORT, RECOMMENDATION & ORDER**

                    LETITIA JAMES
                    Attorney General of the State of New York
                    DANIEL R. MAGUIRE
                    STEPHANIE J. CALHOUN
                    Assistant Attorney General, of Counsel
                    Main Place Tower, Suite 300A
                    350 Main Street
                    Buffalo, New York 14202
                    Tel: (716) 853-8419

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 4
BACKGROUND .............................................................................................................................. 4
ARGUMENT ................................................................................................................................... 5
POINT I        PLAINTIFFS LACK STANDING ...................................................................... 5
     A.        Plaintiff Doyle lacks standing ................................................................................ 5
     B.        Plaintiff Clark lacks standing ................................................................................. 7
POINT II       PLAINTIFFS' FIRST AMENDMENT CLAIM SHOULD BE DISMISSED ....... 8
     A.        Plaintiffs' First Amendment retaliation claim fails to state a cause of action. ....... 8
     B.        AG James' Letter was protected government speech. ........................................... 9
     C.        AG James is entitled to qualified immunity. ........................................................ 12
POINT III      PLAINTIFFS' DEFAMATION CLAIM SHOULD BE DISMISSED ................ 13
     A.        AG James is shielded by absolute privilege. ........................................................ 13
     B.        The allegedly defamatory statements are expressions of opinion, not fact. ......... 15
     C.        AG James is entitled to qualified privilege. ......................................................... 16
     D.        AG James did not make statements about or concerning Pastor Doyle. .............. 17
     E.        The complaint does not state a defamation-by-implication claim. ...................... 17
CONCLUSION .............................................................................................................................. 18

# TABLE OF AUTHORITIES

**_Cases_**

*Bantam Books, Inc. v. Sullivan*,
  372 U.S. 58 (1963) .................................................................................................................. 9

*Brimelow v. The New York Times Co.*,
  20-CV-222, 2020 WL 7405261 (S.D.N.Y. 2020), *aff'd*, 2021 WL 4901969 (2d Cir. 2021)
  (summary order), *cert. denied*, 142 S.Ct. 1210 (2022) ........................................................... 14

*Clark v. McGee*,
  49 N.Y.2d 613 (1980) ............................................................................................................ 13

*Garcia v. Astrue*,
  10 F. Supp. 3d 282 (N.D.N.Y. 2012) ....................................................................................... 4

*Gautsche v. State*,
  67 A.D.2d 167 (3d Dep't 1979) ............................................................................................. 13

*Gross v. New York Times Co.*,
  82 N.Y.2d 146 (1993) ..................................................................................................... 14, 15

*Hull v. Town of Prattsville,*
  145 A.D.3d 1385 (3d Dep't 2016) ......................................................................................... 13

*James v. Powell*,
  14 N.Y.2d 881 (1964) ............................................................................................................ 13

*Jones v. Treubig*,
  963 F.3d 214 (2d Cir. 2020) .................................................................................................. 11

*Keystone Mfg., LLC v. Accuro Medical Products, LLC*,
  2013 WL 2318885 (W.D. Mich. May 28, 2013) ..................................................................... 5

*Lawyers Comm. for 9/11 Inquiry, Inc. v. Barr,*
  No. 19-cv-8312, 2021 WL 1143618 (S.D.N.Y. Mar. 24, 2021) .............................................. 7

*Lombardo v. Stoke*,
  18 N.Y.2d 394 (1966) ............................................................................................................ 13

*Murray v. HuffingtonPost.com, Inc.*,
  21 F.Supp.3d 879 (S.D Ohio 2014) ....................................................................................... 14

*National Rifle Assoc. of Amer. v. Vullo*,
  49 F.4th 700 (2d Cir. 2022), *cert. granted*, 144 S.Ct. 375 (2023) ................................... 10, 12

*Niles v. Wilshire Inv. Grp., LLC*,
  859 F. Supp. 2d 308 (E.D.N.Y. 2012) ..................................................................................... 4

*Okwedyv. Molinari*,
  333 F.3d 339 (2d Cir. 2003) .................................................................................................. 11

*Schoolcraft v. City of New York,*
  133 F.Supp.3d 563 (S.D.N.Y. 2015) ....................................................................................... 7

*Tripathy v. Schneider*,
  2024 WL 1107892 (W.D.N.Y. March 14, 2024) .................................................................. 4

*VDARE Foundation v. City of Colorado Springs*,
  11 F.4th 1151 (10th Cir. 2021) .......................................................................................... 11

*X-men Security, Inc. v. Pataki*,
  196 F.3d 56 (2d Cir. 1999) .................................................................................................. 9

*Zieper v. Metzinger*,
  474 F.3d 60 (2d Cir. 2007) ................................................................................................ 12

**<u>Statutes</u>**

28 U.S.C. § 636(b)(1)(C) ........................................................................................................ 4

**PRELIMINARY STATEMENT**

Defendant Letitia James submits this memorandum of law in support of her objections to the Report, Recommendation and Order of the Hon. H. Kenneth Schroeder, Jr., United States Magistrate Judge, filed March 20, 2024 ("R&R") (Dkt. No. 20), which recommended that defendant's motion to dismiss the complaint be granted in part and denied in part. As explained below, this Court should reject the parts of the report and recommendation that recommend denial of the motion to dismiss and should dismiss the complaint in its entirety.

**BACKGROUND**

Plaintiffs Pastor Paul Doyle and Clay Clark commenced this civil rights action on January 20, 2023, against defendant Letitia James, in both her individual capacity and her official capacity as Attorney General of the State of New York. The action arises out of a letter dated August 3, 2022 (the "Letter"), sent by James to "General Michael Flynn and Clay Clark c/o Cornerstone Church" regarding a planned event at Cornerstone Church in Batavia, New York hosted by "ReAwaken America," a conservative political movement. The complaint alleged that statements in the letter (1) constituted First Amendment retaliation, (2) defamed plaintiffs, (3) violated New York Civil Rights Law § 40-c, and (4) constituted negligence. Dkt. No. 1, ¶¶ 47-86.

AG James moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), contending that plaintiffs lack standing, that the complaint failed to state a cause of action, and that AG James was shielded by qualified immunity with respect to the federal claims and absolute or qualified privilege with respect to the defamation claims. Dkt. No. 13. Plaintiffs opposed the motion, and defendant replied. In the R&R, Magistrate Judge Schroeder recommended that (1) the motion to dismiss for lack of standing be denied; (2) the motion to dismiss the First Amendment retaliation claims be granted as to defendant in her official capacity but denied in all other respects;

4

(3) the motion to dismiss plaintiffs' state law claims against defendant in her official capacity be granted; (4) the motion to dismiss plaintiffs' defamation and defamation-by-implication claims be denied; and (5) the motion to dismiss plaintiffs' claims for violation of New York Civil Rights Law § 40-c and negligence be granted.

## ARGUMENT

When reviewing a Report and Recommendation, a district court "'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.'" *Tripathy v. Schneider*, 2024 WL 1107892 at *3 (W.D.N.Y. March 14, 2024) (quoting 28 U.S.C. § 636(b)(1)(C)). "When a specific objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a de novo review." *Garcia v. Astrue*, 10 F. Supp. 3d 282, 287 (N.D.N.Y. 2012) (citing Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C)). "As to those portions of a report to which no 'specific written objection' is made, the Court may accept the findings contained therein, as long as the factual and legal bases supporting the findings are not clearly erroneous." *Niles v. Wilshire Inv. Grp., LLC*, 859 F. Supp. 2d 308, 316 (E.D.N.Y. 2012) (citations omitted).

## POINT I

## PLAINTIFFS LACK STANDING

### A.     **Plaintiff Doyle lacks standing**

The Magistrate Judge erred in recommending that Pastor Doyle has standing because the Letter was sent "c/o Cornerstone Church" and mailed to Pastor Doyle's home address. R&R, 10 n.1. The Magistrate Judge reasoned that because the Complaint adequately alleged harm to Cornerstone Church's reputation and community standing, it also alleged harm to Pastor Doyle, since the two are synonymous. *Id.*

5

First, the Magistrate Judge erred in holding that "c/o Cornerstone Church" meant the Letter was directed at Cornerstone Church. The commonly understood meaning of sending a letter "care of" someone means "you are sending the letter or a package to an addressee that is accepting the correspondence for the intended recipient . . . Addressing a letter as such also *lets the other party know that the letter isn't intended for them*, but that they're entrusted to give it to the right individual." https://www.indeed.com/career-advice/career-development/care-of-letter (emphasis added); *see generally Keystone Mfg., LLC v. Accuro Medical Products*, LLC, 2013 WL 2318885 (W.D. Mich. May 28, 2013), at *2 (discussing meaning of "care of"). Thus, even if Pastor Doyle were synonymous with Cornerstone Church, the fact that the Letter was sent to Clark and Flynn "care of" Cornerstone Church would still mean that the Letter was not intended for Doyle (or Cornerstone Church), but rather was entrusted *to* Doyle, to give to Clark and Flynn.

Second, the statements in the Letter that are alleged to be reputation-damaging cannot be interpreted as referring to Pastor Doyle or Cornerstone Church. The Magistrate Judge identified two damaging statements in the letter: (1) "past extremist statements made by *yourselves and the other featured speakers* on the tour;" and (1) "I am especially concerned *about featured speakers'* regular allusions to white nationalist ideas connected to the 'Great Replacement Theory.'" R&R, 36 (emphasis in original).  Because the Letter was addressed to Clark and General Michael Flynn, not Pastor Doyle or Cornerstone Church, Dkt. No. 1, Ex. A, "yourselves" does not refer to either Cornerstone Church or Pastor Doyle. Nor does "Featured speakers." As for Cornerstone Church, it could not itself be a "featured speaker" at the event. As for Pastor Doyle, the Letter nowhere refers to him by name or suggests that he is or has ever been a featured speaker on the Tour. Ultimately, the Letter makes no reputationally damaging statements about Cornerstone Church and, therefore, no reputationally damaging statements about Pastor Doyle.

6

B.  **Plaintiff Clark lacks standing**

The Magistrate Judge erred in recommending that Clark has standing because he alleged injury to his reputation based on the Letter. R&R, 9. The Magistrate Judge noted that the Letter "falsely associated [Clark] with racist, 'white nationalist ideals;' the 'Great Replacement Theory;' a racially motivated shooting in Buffalo, New York; and other 'racially motivated violence.'" R&R, 9. The Magistrate Judge, however, never explains (and Clark never alleges) how these "false associations" became public or concretely damaged Clark's reputation.

First, Clark does not provide any specification as to when, where, or how AG James allegedly published the Letter. Indeed, judicially noticeable media reports show that it was *Plaintiffs* who published the Letter and any reputational harm to Clark flows from the publication, not the Letter itself (and Plaintiffs cannily avoid ever alleging how the Letter was first published).[1] In any event, the ReAwaken America Tour was the subject of media coverage well before the Letter, and religious leaders spoke out against the event, highlighting that "some of the speakers were connected to white supremacists."[2]

Second, Plaintiffs do not allege how Clark's reputation suffered given his public stance on controversial issues[3] and that his Tour was regularly met with opposition across the county well

---

[1] https://thedcpatriot.com/breaking-new-york-attorney-general-sends-threatening-letter-to-general-flynn-clay-clark-compares-upcoming-new-york-event-to-charlottesville-and-buffalo-mass-shooter/ (The DCPatriot.com, dated Aug. 9, 2022) ("*Clay Clark just posted a letter* that he received from The New York Attorney General Letitia James.") (emphasis added); https://legalinsurrection.com/2022/08/read-letter-from-ny-attorney-general-letitia-james-threatening-church-hosting-trump-friendly-event/ (Legal Insurrection, dated Aug. 17, 2022) (stating "[w]e obtained the Letter *from the Church*[.]") (emphasis added);

[2] See https://videonewsservice.net/index.php/2022/07/30/genesee-county-local-clergy-meet-with-pastor-doyle-on-saturday-in-regard-to-the-controversial-event-scheduled-at-cornerstone-church/ (Video News, "Genesee County/Local clergy meet with Pastor Doyle on Saturday in regard to the controversial event scheduled at Cornerstone Church," dated Jul. 30, 2022 (last visited Mar. 29, 2022).

[3] https://www.rollingstone.com/culture/culture-features/clay-clark-reawaken-america-maga-tour-trump-1234594574/ (Rolling Stone Magazine, Sept. 17, 2022) ("'I won't allow you to wear [a mask] for the same reason I won't allow people to defecate on the stage,' Clark says.") (last visited Mar. 21, 2023).

before the event.[4] While Pastor Doyle alleged some reputational harm to his community relationships, specifically communities of color (Dkt. No. 1, ¶¶ 7, 13), Clark makes no similar non-conclusory allegation explaining how the Letter concretely harmed his reputation.

Allegations of concrete harm are required to confer standing. *Schoolcraft v. City of New York,* 133 F.Supp.3d 563, 573 (S.D.N.Y. 2015) (per se defamation insufficient). Claiming "reputational harm is not an exception or loophole" and still requires "concrete and particularized," and "actual or imminent," as opposed to "conjectural or hypothetical," injury. *Lawyers Comm. for 9/11 Inquiry, Inc. v. Barr,* No. 19-cv-8312, 2021 WL 1143618, at *8 (S.D.N.Y. Mar. 24, 2021).

## POINT II

### PLAINTIFFS' FIRST AMENDMENT CLAIM SHOULD BE DISMISSED

A.  **Plaintiffs' First Amendment retaliation claim fails to state a cause of action.**

First, the Magistrate Judge erred in concluding that Plaintiffs adequately alleged that the Letter was motivated or substantially caused by Plaintiffs' exercise of their First Amendment right. R&R, 20. While Plaintiffs allege that the Letter was motivated by political-affiliation, religion, race, and the decision to host the event (Dkt. No. 1, ¶¶ 16, 50, 51, 53, 57, 78, 85), their only basis for these allegations is the existence and text of the Letter itself. And the Letter cannot support the inference of improper intent: all it does is remind Clark and Gen. Flynn that New York prohibits racially motivated violence and instruct them "to take all necessary steps to ensure the event complies" with the law. Dkt. No. 1, Ex. A letter warning of the legal repercussions of racially motivated violence is no more intended to chill First Amendment

---

[4] *See, e.g.*, https://katu.com/news/local/controversial-reawaken-america-rally-continues-in-keizer (Controversial ReAwaken America rally continues in Keizer | KATU) (Apr. 2, 2022) (last visited Mar. 4, 2023) (protest "for weeks," with businesses boarding storefronts as a precaution); https://wordandway.org/2022/04/08/christian-leaders-denounce-reawaken-america-tour/ (Christian Leaders Denounce ReAwaken America Tour - Word&Way (wordandway.org)) (Apr. 8, 2022) (last visited Mar. 14, 2023) (Christian leaders speak out against the Tour and mobilized local leaders at multiple stops, including Canton, Ohio and San Diego, California).

8

speech than a letter to a concert organizer warning of the legal repercussions of underage drinking at the event is intended to chill that activity. In this respect, the Letter is no different from many other warnings to follow the law that the Attorney General routinely issues to many different individuals, organizations, and businesses. For example, the Attorney General sent letters raising concerns about an event venue's use of facial recognition software, *see* Ltr. to Madison Square Garden Entertainment Corp.;[5] advising a national retailer to report threats of concrete violence to local law enforcement, *see* Ltr. to Target Corporation;[6] instructing an organization to stop using paid informants to infiltrate Muslim houses of worship, *see* Ltr. to Steven Emerson.[7]

Second, the Magistrate Judge erred in recommending that Plaintiffs adequately alleged that the Letter injured Plaintiffs. R&R, 13. As discussed above, *supra* POINT I, Plaintiffs have not alleged any injury stemming from the Letter. And, to the extent Plaintiffs that argue that the injury is based on publication of the Letter, Plaintiffs have not alleged how or when AG James first published the letter—likely because it was Plaintiffs who first provided the Letter to news organizations for publication.

**B.    AG James' Letter was protected government speech.**

The Magistrate Judge erred in concluding that the Letter was not protected government speech. R&R, 14-20.

First, the Magistrate Judge concluded that the Letter's tone and word choice supported its holding that the Letter was not protected government speech. *Id.* at 17. But on its face the Letter did not, directly or indirectly, threaten to punish speech or association. Instead, the Letter was

---

[5] https://ag.ny.gov/sites/default/files/2023 01/nys_oag_letter_to_madison_square_garden_entertainment_corp.pdf
[6] https://ag.ny.gov/sites/default/files/letters/target-pride-coalition-letter.pdf
[7] https://ag.ny.gov/sites/default/files/letters/2022.04.01_ipt_cease_and_desist_vff.pdf

aimed at unlawful *conduct—i.e.,* violence, harassment, intimidation, and discrimination. The Letter therefore stands in contrast to the cases where an official targeted speech or association and did not merely voice concerns about unlawful conduct that might result from speech or association. For example, in *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 68 (1963), the state commission targeted objectionable books and magazines directly. It did not voice concerns about illegal action that might arise from reading censured material.

Furthermore, the allegedly "heavy-handed [and] ominous" statements in the Letter—(1) that AG James considered Clark and Gen. Flynn's past statement concerning and extremist; and (2) that "such rhetoric" could lead to "violent or unlawful conduct"—are far more restrained than other government speech found not actionable. For instance, in *X-men Security, Inc. v. Pataki*, 196 F.3d 56 (2d Cir. 1999), the Second Circuit reversed the District Court's decision that allowed a retaliation claim to proceed. There, the defendants, a former State legislator and a member of Congress, accused the plaintiff of hating Jews, women, Catholics, and others, adding that awarding a services contract to the plaintiff would "subsidize[] the activities of a hate group and help[] fund the racist and anti-Semitic goals of Louis Farrakhan and the Nation of Islam." *Id.* at 71. The Circuit found that these statements were protected speech by the legislators, and detected "neither in this letter nor in any of the other allegations of the complaint any semblance of threat, coercion, or intimidation by the legislators." *Id.* at 71. The same is true here.

Additionally, the Magistrate Judge erred in characterizing the Letter's closing—requesting Clark and Gen. Flynn's "cooperation in ensuring a peaceful and law-abiding event will be greatly appreciated"—as merely a "nicet[y]." Dkt. No. 1, Ex. A. To the contrary, the closing is a specific acknowledgement that the event may proceed, and a request that the organizers cooperate to ensure

10

that it remains peaceful and law-abiding. Such a common and unremarkable request cannot be seen as attempting to discourage the event.

Second, the Magistrate Judge erred in holding that the Letter could reasonably have been perceived as a threat. In reaching this conclusion, the Magistrate Judge relied entirely on Plaintiffs' allegations "that they perceived [the Letter] as a threat intended to cause them to cancel the ReAwaken America event and/or a threat to prosecute them if they proceeded." R&R, 18. The issue, however, is not merely whether Plaintiffs subjectively perceived the Letter as a threat, but whether the Letter could "reasonably be construed as being unconstitutionally threatening or coercive." *National Rifle Assoc. of Amer. v. Vullo*, 49 F.4th 700, 716 (2d Cir. 2022), *cert. granted*, 144 S.Ct. 375 (2023). It cannot be so reasonably construed. The Letter does not state (or imply) that Plaintiffs were required to curtail their speech or association at the risk of punishment. Indeed, as noted, the Letter is specifically directed at statutorily-prescribed conduct—*i.e.,* violence, harassment, intimidation, and discrimination. The Letter even recognized that the ReAwaken America event could go forward when AG James requested Clark and Gen. Flynn's "cooperation in ensuring a peaceful and law-abiding event."

Third, the Magistrate Judge erred in determining that the Letter referred to adverse consequences for hosting the ReAwaken America event. While the Letter reminds Clark and Gen. Flynn that New York law "prohibits racially motivated violence, harassment, and interference with another person in exercise of their civil rights," the Letter does not, either expressly or implicitly, threaten Plaintiffs with adverse consequences if they proceed with hosting the event or engage in First Amendment activity. Instead, the Letter reminds Gen. Flynn and Clark that anyone who engages in unlawful conduct may face adverse consequences, and any such conduct will be duly investigated. This case is, therefore, a far cry from cases where government officials raised the

11

specter of adverse consequence for directly engaging in First Amendment activity. *Compare Okwedyv v. Molinari*, 333 F.3d 339, 343 (2d Cir. 2003) (holding that letter to billboard owner contained implied threat of adverse consequences if owner did not remove offensive messaged) *with VDARE Foundation v. City of Colorado Springs*, 11 F.4th 1151, 1154 (10th Cir. 2021) (holding that recitation of Colorado law "contain[ed] no plausible threat—let alone a threat of prosecution" even when recited in connection with hosting of event).

### C. AG James is entitled to qualified immunity.

The Magistrate Judge erred in recommending that AG James is not entitled to qualified immunity, for two reasons. R&R, 22. First, the Magistrate Judge reached this conclusion by erroneously interpreting the Letter as an "implied threat[] to employ state power to stifle protected speech." As discussed above, the Letter does not contain such an implied threat.

Second, the Magistrate Judge framed the qualified immunity inquiry at too high a level of generality. *See Jones v. Treubig*, 963 F.3d 214, 224 (2d Cir. 2020) (explaining that in that qualified immunity context the "clearly established right…must be defined with specificity"). The question for purposes of qualified immunity is *not* whether an implied threat to employ state power to stifle protected speech violates the First Amendment. Rather, the question is whether it was clearly established that an expression of concern by government authorities about speech at an event leading to violence and a warning to event organizers to follow the law may *themselves* be deemed implied threats in the first instance. And we are unaware of controlling precedent where an elected official was found to violate the First Amendment by voicing her concerns that an event hosting speakers who, in her view, had engaged in provocative and divisive speech in the past could lead to violence, harassment, intimidation, and/or discrimination. Conversely, the Second Circuit has found that government speech which was more intrusive than that here did not violate the First

12

Amendment and that government officials were entitled to qualified immunity. *See Vullo*, 49 F.4th at 720-21 (holding that even though defendant might have urged an entity to cut ties with its accomplice during an ongoing, legitimate investigation into serious misconduct, there was no similar case law and that, far from acting irresponsibly defendant was using her office to address policy issues of concern to the public); *Zieper v. Metzinger*, 474 F.3d 60, 66-67 (2d Cir. 2007) (holding that law enforcement officers were entitled to qualified immunity when they repeatedly contacted plaintiff, his lawyers, and the website host for the specific purpose of removing a controversial video from view).

Ultimately, AG James may, consistent with the First Amendment, express her concerns about potential for violence, and make clear that she has the authority to investigate and prosecute such conduct. There is no clearly established law holding that speech similar to that contained in the Letter was not protected government speech, and thus AG James is entitled to qualified immunity.

## POINT III

### PLAINTIFFS' DEFAMATION CLAIM SHOULD BE DISMISSED

**A.     AG James is shielded by absolute privilege.**

The Magistrate Judge erred in recommending that AG James is not entitled to absolute immunity from plaintiffs' defamation claims. After listing the Attorney General's duties under New York Executive Law § 63, the Magistrate Judge reasoned that the Letter was not written to fulfill any of these statutory duties because AG James had not initiated any "official investigation," prosecution, or other governmental process against plaintiffs. R&R, 30. This reasoning is flawed. The Magistrate Judge did not cite a single case in which New York courts have denied absolute privilege on the ground that a government officer's statement otherwise made pursuant to official

duties nonetheless fell outside the privilege because it was not made in the context of an on-going investigation or litigation. Although, as the Magistrate Judge observed (R&R at 31), the court in *Gautsche v. State*, 67 A.D.2d 167, 169 (3d Dep't 1979) granted absolute immunity for allegedly defamatory statements made in the course of an Attorney General Office fraud investigation, there is no New York case holding that a pending "official" investigation or legal proceeding is an essential prerequisite to the invocation of absolute privilege. The only requirement is that the statements be "related to" the public official's responsibilities and "made *during the course of the performance* of [her] duties." *Clark v. McGee*, 49 N.Y.2d 613, 619 (1980) (emphasis added); *accord Hull v. Town of Prattsville,* 145 A.D.3d 1385, 1389 (3d Dep't 2016). Conversely, when a public official's statements are "unrelated to any matters within [the official's] competence," absolute privilege does not apply, *Lombardo v. Stoke*, 18 N.Y.2d 394, 401 (1966), such as when a congressman, in a television interview, referred to someone as a "bag woman" for a police department. *James v. Powell*, 14 N.Y.2d 881, 881-82 (1964).

Nothing in New York Executive Law § 63 requires a formal initiating act for an Attorney General to speak within the scope of her official duties. The Attorney General's official duties include alerting individuals, organizations, or businesses to her concerns about potential violations of the New York laws cited in the letter, and that would include concerns about speech or other acts that might provoke racial violence. The Letter was thus directly "related to matters" within AG James's "competence," namely, the laws cited in the letter. Because the Attorney General was performing official functions "related" to "matters" within her "competence" in expressing her concerns to General Flynn and Clay Clark about the upcoming gathering, she is entitled to absolute immunity.  [ignores worldview start as a letter]

14

**B.      The allegedly defamatory statements are expressions of opinion, not fact.**

The Magistrate Judge erred in recommending that plaintiffs stated a defamation claim because the statements in the letter were statements of fact, not opinion. AG James's statement that Gen. Flynn and Clark had in the past made statements that were "extremist" was an expression of an opinion about the nature of those statements, not an objective or falsifiable fact. *See Murray v. HuffingtonPost.com, Inc.*, 21 F.Supp.3d 879, 885 (S.D Ohio 2014) (article's reference to the plaintiff as an "extremist" presented a "subjective opinion" rather than an actionable "objective fact"). Likewise, characterization of an individual as "white nationalists" constitutes "non-actionable opinion commentary." *Brimelow v. The New York Times Co.*, 20-CV-222, 2020 WL 7405261 at *9 (S.D.N.Y. 2020), *aff'd*, 2021 WL 4901969 (2d Cir. 2021) (summary order), *cert. denied*, 142 S.Ct. 1210 (2022).

In concluding that the statements in the letter were falsifiable statements of fact, the Magistrate Judge recited the distinction drawn in caselaw between (1) a statement of opinion that implies a basis in facts that are not disclosed (which is actionable) and (2) a statement of opinion accompanied by a recitation of the facts on which it is based or one that does not imply the existence of undisclosed underlying facts (which is not actionable). *Brimelow,* 2020 WL 7405261 at 6, *quoting Gross v. New York Times Co.*, 82 N.Y.2d 146, 153-154 (1993). The Magistrate Judge then observed that in *Brimelow* the district court concluded that statements referring to the plaintiff as an "open" white nationalist were statements of fact, not opinion, because the statements implied that the plaintiff publicly self-identified as a white nationalist, a verifiable fact, yet the article in which the statements were published did not provide any supporting information. R&R, 37, quoting *Brimelow,* 2020 WL 7405261 at 6.

15

But no such verifiably factual statements were made about Flynn, Clark, or Doyle in Attorney General James's letter. Although the letter did not specify what past statements Clark or Flynn had made that James considered to be extremist, the absence of those specifics did not transform her opinion about the nature of those statements into an assertion of fact; with or without those specifics, simply suggesting that someone made "extremist" statements is merely the expression of an opinion, not a verifiable fact. It is a statement that "does not imply the existence of undisclosed underlying facts." *Gross,* 82 N.Y.2d at 153. Indeed, in *Brimelow*, the very case relied on by the Magistrate Judge, the court concluded that calling someone a "white nationalist" (as opposed to an "open" one) or referring to someone as a founder of an "anti-immigrant website" and a "white supremacist website" were expression of opinions, not falsifiable facts. *Brimelow,* 2020 WL 7405261 at *6, *11. And it would have made no difference to a reader of the Letter even had the Attorney General quoted the past statements by the addressees of the Letter, because in either case (quoted or not) the reader would understand that the addressees made statements that, in the Attorney General's opinion, were extremist. As for Paster Doyle, the letter does not mention him at all, nor does it make any statements of opinion or fact about him.

C.    **AG James is entitled to qualified privilege.**

The Magistrate Judge erred in recommending that AG James is not entitled to a qualified privilege for the statements in the letter. The Magistrate Judge reasoned that the complaint plausibly alleged that Attorney General James acted with reckless disregard for the truth, because it alleged that James conducted no investigation before stating that Clark and Doyle were affiliated with racist ideology and racially motivated violence. R&R, 33. First, the letter does not make any allegations at all about Doyle, nor does it opine that Clark is a racist or was affiliated with racially motivated violence. Rather, the letter says that speakers at past events alluded to white nationalist

16

ideals connected with the Great Replacement Theory, which itself has been linked to violent actions.

Second, the Complaint's allegation that AG James acted with reckless disregard for the truth is expressed in conclusory terms, without factual support. The Complaint does not allege any basis for the conclusion that the Attorney General conducted no inquiry before sending the letter. Indeed, the letter's reference to statements made by featured speakers at past ReAwaken America events indicates that the Office was duly informed about the existence of the tour and the content of speech featured at past tour events.

**D.      AG James James did not make statements about or concerning Pastor Doyle.**

The Magistrate Judge erred in concluding that the complaint alleged facts that could allow a reasonable reader of the letter to infer that James was making defamatory statements about Pastor Doyle, even though the letter was not addressed to him and does not mention him at all. As explained above, *supra* POINT I.A, the Letter was addressed to Clark "care of" Cornerstone Church, meaning that the Letter was not intended for Cornerstone Church (or Pastor Doyle), but rather was entrusted to them to give to Clark.

**E.      The Complaint does not state a defamation-by-implication claim.**

The Magistrate Judge determined that the Complaint stated a defamation-by-implication claim because the Letter stated that the scheduled event coincided with the five-year anniversary of the deadly Unite-the-Right rally in Charlottesville, Virginia, and that featured speakers at past ReAwaken America events had alluded to the Great Replacement Theory, which itself had been linked to violent actions. R&R, 40. From this, the Magistrate Judge concluded that a reasonable reader of the letter might conclude that Clark and Doyle would or could contribute to racially-

motivated violence and would associate their beliefs with the cause of a local mass shooting. *Id*. at 41.

That is not a fair reading of the Letter, however. As for Pastor Doyle, since the letter was not addressed to him and never mentioned him, but was instead sent to Flynn and Clark care of the Cornerstone Church (meaning it was not intended for Doyle), a reasonable reader could not conclude that the letter implied anything about Doyle's beliefs. Nor would a reader of the letter draw the inference that Clark would intentionally contribute to racially motivated violence. The only fair reading of the letter is that AG James was concerned that the coincidence of the proposed dates with the five-year anniversary of the Unite the Right rally in Charlottesville, Virginia created an undue risk of racial violence—a legitimate concern for a law-enforcement official to express as part of her official duties. The Attorney General did not say that Flynn, Clark or the tour organizers intentionally planned the event at Cornerstone Church to coincide with this anniversary; rather, this circumstance may have been unknown to them or, if known, not given enough consideration as to its potential to cause conflict. The Attorney General did not defame plaintiffs, either directly or by implication, simply by pointing out the coincidence of the planned events with the anniversary of Charlottesville and the risk of extremist violence it entailed.

## CONCLUSION

For the foregoing reasons, the Court should reject the portions of the Report and Recommendation recommending the denial of Defendant's motion to dismiss and, instead, grant Defendant's motion to dismiss in full.

DATED: Buffalo, New York
April 17, 2024

        LETITIA JAMES
        Attorney General of the State of New York
        Attorney for Defendant

        BY: */s/ Daniel R. Maguire*
        DANIEL R. MAGUIRE
        STEPHANIE J. CALHOUN
        Assistant Attorney General, of Counsel
        350 Main Street
        Main Place Tower, Suite 300A
        Buffalo, New York 14202
        (716) 853-8419
        daniel.maguire@ag.ny.gov