UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PASTOR PAUL DOYLE, and
CLAY CLARK,

Plaintiffs,

vs.

ATTORNEY GENERAL LETITIA JAMES, in her individual and official capacity,

Defendant.

Case No. 23-cv-00071-JLS-HKS

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HER OBJECTIONS TO THE REPORT, RECOMMENDATION & ORDER**

LETITIA JAMES
Attorney General of the State of New York
DANIEL R. MAGUIRE
STEPHANIE J. CALHOUN
Assistant Attorneys General, of Counsel
Main Place Tower, Suite 300A
350 Main Street
Buffalo, New York 14202
Tel: (716) 853-8419

## PRELIMINARY STATEMENT

Defendant Attorney General Letitia James ("Attorney General James" or the "Attorney General") submits this reply memorandum of law in further support of her objections to the Report, Recommendation and Order ("R&R") of the Hon. H. Kenneth Schroeder, Jr., United States Magistrate Judge, filed September 22, 2026 ("R&R") (ECF No. 47), which recommended denying Attorney General James's partial motion to dismiss. This Court should reject the R&R and grant the partial motion to dismiss.

## ARGUMENT

## POINT I

### ATTORNEY GENERAL JAMES HAS QUALIFIED IMMUNITY FROM THE FIRST AMENDMENT CLAIMS BECAUSE THE LETTER CANNOT PLAUSIBLY BE CONSTRUED AS A THREAT TO STIFLE PLAINTIFFS' SPEECH, MUCH LESS TO VIOLATE CLEARLY ESTABLISHED LAW

When, as here, the adverse action underlying a First Amendment claim takes the form of a government official's speech, both retaliation and censorship claims require a showing that the speech, "viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff's speech." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 191 (2024) (setting out this standard in addressing both retaliation and censorship claims, after noting that this Court had analyzed both claims together); *see Hammerhead Enterprises, Inc. v. Brezenoff*, 707 F.2d 33, 39 (2d Cir. 1983) (applying same standard to censorship claim); *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 70-72 (2d Cir. 1999) (applying same standard to retaliation claim); *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687-88 (4th Cir. 2000) (same, collecting cases).

Plaintiffs argue that Attorney General James's letter contains an implied threat of adverse government action and that Supreme Court and Second Circuit precedent clearly established that

implied threats by government officials can violate the First Amendment. Pl. Mem., ECF No. 50, 5-8. This argument, however, ignores Attorney General James's primary argument: even if Attorney General James's letter made an implied threat of government action, that threat was not made to punish or suppress Plaintiffs' speech. Instead, the implied threat was directed solely at deterring racially motivated violence and other discriminatory conduct, not at stifling Plaintiffs' speech. The letter thus differs from the government speech as issue in all of the cases where the Second Circuit or Supreme Court have found impermissible threats of state action to stifle protected speech. Each of those cases involved an unequivocal demand, backed by a threat of adverse governmental action, that a party aid the government in suppressing some disfavor viewpoints. *See* Def. Obj., ECF No. 48, 11. Here, in contrast, Attorney General James's letter requests only that plaintiffs take steps to ensure that their planned event complies with New York's antidiscrimination laws.

There is no case holding, much less clearly establishing, that such a request could be viewed as an impermissible attempt to stifle protected speech. Attorneys general of all political affiliations have issued similar messages warning individuals to avoid violent and other unlawful conduct during politically charged events. No case delineates the permissible contours of such messages, much less establishes a rule clearly prohibiting them.

Plaintiffs argue that, at the motion to dismiss stage, Attorney General James cannot rely on her own characterization of the letter. Instead, the Court must credit Plaintiffs' allegation that a reasonable recipient understood the letter as a coercive and retaliatory threat. Pl. Mem., 8. As discussed above, however, Attorney General James's primary argument does not rely on whether the letter does or does not contain implied threat. Instead, Attorney General James's argument depends on whether any such implied threat was directed at suppressing disfavored speech. The

plain text of the letter contains no demand, express or implied, that Plaintiffs suppress some disfavored view; rather, the letter requests only that Plaintiffs take steps to ensure that their planned event complies with New York's antidiscrimination laws, and that Attorney General James stands ready to enforce those laws.[1]

For the reasons stated above and in the Attorney General's previous briefs, Plaintiffs have not plausibly alleged that Attorney General James violated their First Amendment rights, and, in any event, Attorney General James's Letter did not violate clearly established law. Therefore, Attorney General James is entitled to qualified immunity.

## <u>POINT II</u>

## ABSOLUTE PRIVILEGE DEFEATS PLAINTIFFS' STATE-LAW DEFAMATION CLAIMS

Plaintiffs argue that Attorney General James's letter was not privileged because it was "untethered to any official action or process involving plaintiffs." Pl. Mem., 10. Specifically, Plaintiffs claim that the letter is not privileged because the Attorney General had not initiated any investigation, prosecution, or any other governmental process against Plaintiffs. *Id.* This argument fails.

First, Plaintiffs claim that *Gautsche v. State*, 67 A.D.2d 167 (3d Dep't 1979) supports its argument that the Attorney General only enjoys absolute privilege when she makes a comment during an ongoing investigation or prosecution. It does not. *Gautsche* simply held that statements made by the Attorney General during an official fraud investigation fell within the Attorney General's duties and thus were covered by the absolute privilege. The court did not

[1] In her motion to dismiss, Attorney General James also argued that Plaintiffs' First Amendment retaliation claim failed for additional reasons. ECF No. 40-1, 14-16. At this point, the arguments regarding those additional reasons have been fully developed. To avoid repetition, Attorney General James refers the Court to the sections of previous briefs addressing these issues. *See* ECF No. 40-1, 14-16; ECF No. 46, 7-9; ECF No. 48, 12-14.

hold that the Attorney General's job duties were limited to bringing such an investigation or that the Attorney General could not invoke the absolute privilege except in connection with such an investigation.

Second, Plaintiffs' attempt to distinguish the cases cited by Attorney General James wherein courts found that statements by a college president, a borough president, school officials, and a county health commissioner enjoyed absolute privilege by arguing that the essential function of those roles included informing the public about matters within their own institutions while the Attorney General's essential function *only* involves the investigation and enforcement of New York's laws. This distinction is untrue. Courts have recognized that public policy requires providing the Attorney General with latitude to make public statements about an Attorney General investigation or prosecution are protected by absolute privilege. *See Gautsche*, 67 A.D.2d at 170 ("Public policy dictates that the Attorney-General disclose to the public the facts concerning any fraudulent or illegal activities uncovered in the process of any investigation, as well as the facts concerning any prosecution therefor").

The issue then is whether the availability of the absolute privilege turns on the defendant officials' initiation of a formal governmental process or on an express statutory duty to issue the challenged statement. It does not. The Court of Appeals held that statements fall within the officials' duties when they are "made in the course of the performance of ***some*** function connected with the office." *Sheridan v. Crisona*, 14 N.Y.2d 108, 113 (1964) (emphasis added). Here, the Attorney General's official duties include alerting individuals, organizations, or businesses to her concerns about potential violations of the New York laws cited in the letter, and that would include concerns about speech or other acts that might provoke racial violence. The Letter was thus directly related to matters within Attorney General James's competence,

namely, the laws cited in the letter. Because the Attorney General was performing official functions related to matters within her competence in expressing her concerns to plaintiffs about the upcoming gathering, she is entitled to absolute immunity.

The decisions flagged by the Second Circuit on remand support the proposition that statements made outside an investigation or quasi-judicial proceeding can be protected by absolute privilege. In *Weiner v. Weintraub*, 22 N.Y.2d 330 (1968), the Court of Appeals held that a complaint letter sent to the bar association's grievance committee was absolutely privileged even thought the letter was sent ***before*** the grievance committee formally opened any investigation.

Even more relevant is *Rosenberg v. MetLife, Inc.*, 8 N.Y.3d 359 (2007). There, the New York Court of Appeals held that statements made by an employer on a National Association of Securities Dealers' employee termination notice (Form U-5) were subject to an absolute privilege. Plaintiffs argue that the Form U-5 was privileged because "it was a mandatory 'preliminary or first step' in the NASD's existing quasi-judicial process." Pl. Opp. 12. The Form U-5, however, does not initiate an investigation or a quasi-judicial process. Instead, "the form is designed to alert the NASD to potential misconduct and, in turn, enable the NASD to investigate, sanction and deter misconduct by its registered representatives." *Rosenberg*, 8 N.Y.3d at 367-68. Put differently, statements on the Form U-5 ***may*** lead to the initiation of an investigation or quasi-judicial process but do not ***have to*** lead to an investigation. The Court of Appeals held that statements on the Form U-5 have absolute privilege regardless of whether the NASD subsequently opens an investigation or quasi-judicial process.

Here, as in *Weiner* and *Rosenberg*, statements in Attorney General James's letter are protected by absolute privilege regardless of whether Attorney General James had initiated any

formal governmental process relating to the event. Attorney General James's ability to send such letters serve an important public policy. For Attorney General James to properly fulfill her statutory role of enforcing New York's antidiscrimination law, she must have the ability to identify situations in which those laws might be violated and to instruct relevant individuals to comply with those laws.

## CONCLUSION

For the foregoing reasons, the Court should reject the Report and Recommendation and grant Defendant's motion to dismiss.

DATED: Buffalo, New York
October 28, 2026

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendant

BY: *<u>/s/ Daniel R. Maguire</u>*
DANIEL R. MAGUIRE
STEPHANIE J. CALHOUN
Assistant Attorney General, of Counsel
350 Main Street
Main Place Tower, Suite 300A
Buffalo, New York 14202
(716) 853-8419
daniel.maguire@ag.ny.gov